### Daniel Boone Coal Company v. Turner.

(Decided October 25, 1918.)

#### Appeal from Perry Circuit Court.

1. Negligence—Pleading and Proof.—Where the negligence complained of is stated in general terms, any acts of negligence may be proved and relied on, but, if the specific acts constituting the negligence complained of are alleged, acts not alleged in the pleadings can not be proven nor relied upon for recovery.

2. Trial—Instructions.—The instructions must be confined to the issues made in the pleadings.

MORGAN & NUCKOLS for appellant.

EVERSOLE & TURNER for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellant, Daniel Boone Coal Company, is a corporation, engaged in the operation of a coal mine, wherein more than ten persons are employed, in fact, about thirty persons are engaged in working in the mine. The appellee, Kelly Turner, who was a young man, twenty years of age, was employed to mine and load coal, in the mine, and had been so engaged for three or four days, but, he had, theretofore, worked as a helper for a miner, in the mine, for about three weeks. Under the regulations prescribed by the owners of the mine, the miners, put in blasts of powder, into the face of the coals, for the

purpose of dislodging it, so that it could be handled, at eleven o'clock a. m. and five o'clock p. m. These blasts of powder were called "shots." The appellee was acquainted with this regulation. The miners, who worked at the farthest points in the mine from its opening, first prepared their "shots," and ignited the fuse, and then retired, giving warning to the other miners, as they retired toward the opening of the mine. When the other miners, who worked, at points nearer the opening, received the warning, they would set their fuses, and retire, including those, who had not prepared their "shots" for that time.

On the 12th day of January, 1916, at about five o'clock p. m. the appellee, who was engaged, in working in the "second right entry," started to leave the mine, and had gotten into the "main entry," was overtaken by what he describes as a "storm of fire" accompanied with apparently an explosion of the gases and dust, in every part of the mine, which was so violent, that he was knocked down, by the force and velocity of the air, and his head, in falling, came in contact with a rib of the coals, upon the side of the "entry," and a wound was cut into his head to the bone of the skull, and when he arose and attempted to run toward the opening of the mine, there came a reaction of the air, which caught him in the front and again knocked him to the ground. The explosion seemed to start from the "heads" of the "rooms" and "entries" and proceeded toward the mouth of the mine, with great force, and the action of the air was accompanied by fire, blazing dust and debris, and then it returned from the mouth of the mine toward the "heads," with the same velocity and accompanied with the same elements. The skin upon his hands, face, ears, neck and back of his head was burned, so that the outer skin slipped off. His finger nails were so burned, that they came off, from his fingers, and his hair and eyebrows were consumed. His eyes were burned, and injured, so that since, he has been unable to read, except for a short space, at a time. His right hand was stiffened for some time. He was unable to labor for about three months.

He instituted this action against appellant for the recovery of damages on account of his injuries, and upon a trial, recovered a verdict and judgment for $1,000.00.

The motion of appellant for a new trial, having been overruled, it has appealed.

A reversal of the judgment is sought upon the following grounds:

(1) The court erroneously overruled its motion for a directed verdict in its favor.

(2) The court misinstructed the jury and failed to properly instruct the jury.

(3) The court erred to its prejudice, in the admission of incompetent testimony against it, and in the rejection of competent testimony offered by it.

(4) Remarks made orally by the judge to the jury were prejudicial.

(5) The amount of damages allowed was excessive.

(a) As the judgment must be reversed, and another trial had, the evidence offered by appellee, and its weight will not be discussed, but, suffice it, to say, that there was evidence sufficient of the cause of action relied upon, to require the submission of the action to the jury, and hence, the denying of appellant's motion for a directed verdict, was not error.

(b) The appellee's action was based entirely upon the theory, that for some time previous to, and up to the time of his injuries, the appellant had negligently failed to maintain a proper ventilation, in its mine, which had resulted in an accumulation of combustible gases and dust, in various parts of the mine, to such an extent, that an ignition and an explosion were produced, which caused his injuries. The appellant's theory of the cause of the injuries, was that miners, or some of them, in preparing blasts to open up, separate and dislodge the coals, had bored the holes, in which the powder was placed to too great a depth, into the face of the coal, or had failed to tamp the powder properly, and that from one or both of these causes, "windy shots" were produced. "Windy shots" are such as are ineffective and do not result in separating and dislodging the coals, but, the holes remain intact, and the burning powder is blown out into the mine; and that no explosion of gases or dust resulted, but, that it did result in a fierce rush of the air, throughout the mine, accompanied by fire and flying debris, which overtook, knocked down and burned appellee, and hence appellee's injuries resulted, entirely, from the negligence of his fellow miners in preparing and firing the "windy shots," and not from any negligence of the ap-

pellant. The appellee upon the other hand, contended, that the "windy shots" would not have produced the explosion, except for the presence in the mine of combustible gases, which had accumulated, because of the negligence of appellant in failing to furnish and maintain a sufficient current of air in the mine to dissipate and carry out the gases, and if the "windy shots" were the immediate cause of the explosion, that the negligence of the miners, in the manner of "firing" the "shots," was only, concurrent, with the negligence of appellant, and that without the negligence of appellant, the explosion would not have occurred.

The appellee, in his petition, specifically alleged and set out, the acts of negligence on the part of appellant, which he claimed resulted, in his injuries. The acts of negligence charged and relied upon were:

(1)   The failure to provide proper equipment, in the way of suction, force fans, and exhaust steam furnaces, or other contrivances, sufficient to properly ventilate its mine, or of sufficient capacity and power to produce a sufficient amount of air, in the mine.

(2)   The failure to make and provide proper "break throughs," and at the necessary and required places.

(3)   The failure to keep the old "break throughs" properly bratticed, so as to prevent short circuits of the air, and thereby prevented its current reaching the "heads" of the "rooms" and "entries."

(4)   The failure to provide in the mine, safe stoppings, in the way of "check doors," and the failure to keep the "trap" doors closed.

The allegation is then made, that because of the acts of negligence above stated, "the air could not and did not pass to the heads of the rooms and entries of its said mine, and such air as was produced, if any, was not properly distributed through the different rooms and entries, and that by reason thereof, on said date of January 12th, 1916, the air in said mine had become and was so charged and filled with poisonous combustible gases and dust, . . . so that on said date while plaintiff was employed, as aforesaid, . . . said poisonous and noxious gases and dust ignited, and there having, . . . accumulated such an enormous amount of such gases and dust, in said mine, the ignition thereof was simultaneously followed by an explosion of said gases and dust, etc."

There is no criticism of the first and second instructions which define "ordinary care" and "negligently," as used in the instructions, and they do not appear to be subject to any criticism.

The third instruction is criticised upon the contention, that it authorizes a recovery, because of acts of negligence not relied upon, and touching the acts of negligence there referred to, advises the jury, as to the statutory duties of appellant, with reference to such subjects. The instruction, however, does not seem to be subject to any meritorious criticism.

The fourth instruction directs the jury to find for the plaintiff, if the "defendant or its mine boss working under it failed to use ordinary care in regulating the time and manner in which the miners should fire their shots, and negligently allowed them to fire their shots in such a way as to cause the explosion, if they shall believe from the evidence there was an explosion, etc. . . ."

By the fifth instruction, the jury, is again directed to find for the plaintiff, if the defendant had failed to perform any of the duties set out in the third and fourth instructions. By the sixth instruction, the jury is advised, that if the explosion was caused solely by the negligence of the miners by the negligent manner of "firing their shots," to find for defendant, but, that the defendant was responsible, if it was negligent as set out in instructions three and four, and the explosion would not have occurred, but for its negligence, as set out in the latter instructions.

By the eighth instruction, the jury is directed to find for the defendant, unless there was negligence on its part as set out in instructions, three and four.

Hence, it appears, that the jury was directed to find for plaintiff, if defendant was negligent in regulating the time and manner, in which the miners should "fire their shots." This direction was repeated in the fifth instruction. The sixth instruction directed the jury, that, although the explosion was caused, solely by the negligence of the miners, in the manner of firing the "shots," yet, the verdict must not be for the defendant, if the defendant was negligent in regulating the time and manner in which the "shots" should be "fired." The seventh instruction precludes a verdict for the defendant, at all, if it had been negligent in "regulating the time and man-

ner, in which the miners should fire their shots." The result of all of which was to direct the jury to find a verdict against appellant, and in favor of appellee for an act of negligence, of which appellee did not complain, and for which he had not sued. The appellee does not rely nor charge appellant with any negligence, except a failure to properly supply the mine with air, which resulted, as he alleged, in a condition, which caused the explosion.

The acts of negligence of appellant, in failing to supply the mine with air, are specifically set out in the petition, and in no place is any averment to the effect, that the appellant had been negligent in failing to properly regulate the time and manner in which the miners should make the "shots," nor is it alleged anywhere, that this caused, or contributed to the cause of the explosion.

It is an elementary rule of practice, that the instructions should be confined to the issues made by the pleadings, and that an instruction is not authorized upon an issue not made or presented by the pleadings. Ballard & Ballard Co. v. Durr, 165 Ky. 632; Bowling v. Archer, 157 Ky. 540; C. N. O. & T. P. Ry. Co. v. Crabtree, 30 R. 1000; L. & N. R. R. Co. Co. v. Dickel, 31 R. 894; Lexington Ry. Co. v. Britton, 130 Ky. 676; Murray v. C. & O. Ry. Co., 139 Ky. 379. It is likewise well settled, that in an action for personal injuries, caused by negligence of the defendant, the plaintiff may aver the negligence complained of in general terms, and then may show any specific acts of negligence, which the evidence conduces to support, but, if he specifically avers the acts constituting the negligence, he can not prove nor rely upon acts of negligence, not alleged in his pleadings. L. & N. R. R. Co. v. McGary's Admr., 104 Ky. 517; Gaines & Co. 32 R. 1241; Ballard & Ballard Co. v. Durr, *supra*.

Hence, the fourth instruction was erroneous, and it was likewise error to limit the effect of the fifth, sixth and seventh instructions, by a reference to the requirements of the fourth.

(c) Evidence was admitted over the objection of the appellant to the effect, that appellant had permitted the air courses, in the mine to become obstructed with debris, and thus had been negligent in furnishing the mine with air. This was not alleged in the pleadings as an act of negligence causing the injuries. Evidence also was allowed, over the appellant's objection, tending to

prove, that appellant had made no regulations, nor taken any supervision over the manner, in which the miners were required to "fire their shots." The admission of proof in regard to either of these claimed acts of negligence, by appellant, was erroneous, because these were not acts of negligence relied upon, in the pleadings, nor complained of. Where specific acts of negligence are relied upon, evidence of other acts of negligence are not admissible.

(d) It will not be necessary to consider the remarks made by the judge to the jury, which are complained of, as upon another trial, they will not, probably be repeated.

The judgment is reversed, and cause remanded for proceedings consistent with this opinion.