# Cincinnati, New Orleans & Texas Pacific Railroad Company v. Ross.

## Ross v. Jones.

(Decided May 13, 1927.)

### Appeals from Pulaski Circuit Court.

1. Damages.—Verdict of $12,000 for personal injury, from which traumatic neurasthenia was claimed to have resulted, held excessive, in view of unsatisfactory evidence of permanency.
2. Evidence.—Physician's evidence, in personal injury action, that government physicians now consider traumatic neurasthenia an incurable disease, was hearsay, and should have been rejected.
3. Evidence.—Opinion of nonexpert as to plaintiff's nervousness, and as to whether plaintiff's physical condition was such that he could do any labor, held improperly admitted.
4. Evidence.—Testimony, in personal injury action, as to plaintiff's complaints regarding his head and neck, and similar expressions concerning his condition after accident, made to witness who was not physician, held incompetent as of self-serving nature.

MAURICE L. GALVIN, EDWARD COLSTON and WILLIAM WADDLE for appellant.

WILLAM M. CATRON and JOHN W. COLYAR for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing on the first appeal and affirming on the second.

The first-named appeal is one by the railroad company seeking to reverse a judgment for $12,000 entered against it in an action by Ross for personal injuries. The second-named appeal is one by the plaintiff, Ross, seeking to reverse a judgment entered on a verdict wherein his action was dismissed against the appellee Jones, who was a joint defendant with the railroad company.

On the first trial a verdict was returned and judgment entered against the two defendants jointly for $10,-000, but upon the last trial there was a finding of $12,000 against the railroad company, and nothing against Jones.

Upon the first appeal the judgment was reversed, primarily for the reason that it was "flagrantly excessive" in amount, although one other error was pointed out. 212 Ky. 619, 279 S. W. 1076.

That opinion goes into the details of the evidence, and reaches the conclusion that there was no such satis-

factory evidence of permanent injury as to justify the
$10,000 verdict.

On the last trial there was no material change in the
evidence as to the nature or extent of appellee's injuries,
except that one physician, who testified on both trials for
the plaintiff, upon the last trial modified his testimony
given on the first, and now states, in substance, that per-
sons suffering from traumatic neurasthenia rarely ever
recover, and that that is the modern view of physicians
as he now understands it.   He undertakes to base that
change in his opinion upon the assertion that government
physicians now hold that traumatic neurasthenia is an
incurable disease, and that his own opinion is correspond-
ingly changed.   He refers to no text-book, nor to any
other medical authority, but bases his change of view
and his present opinion wholly upon the assertion that
government physicians now consider traumatic neuras-
thenia an incurable disease.

On the last trial plaintiff introduced as an expert Dr.
W. L. Heiser, who had not been introduced on the former
trial.   His testimony in effect is that about six months
before the last trial appellee came to him, and that, after
receiving from him a history of the case, he made a
thorough examination of all the organs of his body, and
found nothing abnormal; that he had no fracture or dis-
location; and that his kidneys, blood, heart, liver, and
throat were normal; that he made X-ray plates of his
head and the back of his neck and of his breast bone and
ribs; and that in none of them did he find a dislocation,
fracture, broken bone, or new growth of bone, "nor did I
find anything specifically wrong."   But he says that on
testing his reflexes he was convinced that he had some
kind of nervous disease or disorder, and advised him to
see a specialist in that line, and expressly says he was
unable to state whether the nervous condition was per-
manent.

The evidence of these two witnesses seems to repre-
sent the only difference in the evidence on the last and on
the first trial as to the nature and extent of appellee's
injuries.   One of them, admitting a change in his pro-
fessional opinion since the last trial, now expresses the
view that traumatic neurasthenia generally results in a
permanent condition; while the other, after a thorough
examination and the taking of several X-ray pictures,
finds a condition of nervousness, and does not undertake
to say that it is a permanent condition.

The evidence discloses that even before the accident appellee was a nervous man, and suffered from nervous indigestion, and, while it may be concluded from the evidence that the shock resulting from the accident may have emphasized for a time his nervous condition, it is by no means convincing that he thereafter suffered from traumatic neurasthenia, or that, if he did, it was a permanent condition.

Certainly, then, if a $10,000 verdict was flagrantly excessive, the mere fact that one medical expert changed his view, and expressed his opinion on the second trial that defendant's injuries were permanent, cannot justify the upholding of a $12,000 verdict. The various activities engaged in by appellee after the accident as pointed out in detail in the former opinion are convincing that it would be an outrageous travesty upon justice for the courts to permit to stand any such exorbitant recovery for the injuries disclosed by this record, and we therefore without hesitation find the verdict to be exorbitant and superlatively excessive.

The form in which the physician who changed his opinion was permitted to give his reasons therefor was very objectionable. Or course, he had a right to change his expert opinion, and he had a right to give all legitimate reasons therefor, but his mere assertion that government physicians and experts had of late years reached the conclusion that traumatic neurasthenia was a permanent condition, in the absence of some medical authority or some opinion of distinguished medical authority in the form of an expert thesis on that subject, was unsatisfactory. In the form his reason was given it might merely have represented the individual opinion of some government doctor with whom he had talked, and lacks the convincing quality of competent medical authority. His evidence, as given, might have carried to the minds of the jury the conviction that all government physicians agreed that such a condition was a permanent one. The evidence, as given about the opinion of government physicians, was purely hearsay, and should have been rejected. L. & N. v. Murphy, 150 Ky. 176, 150 S. W. 79.

The court also erred in permitting the nonexpert witness Waddle to testify that appellee seemed to be nervous all the time, and complained of his head and neck, and similar expressions concerning his condition after the accident. He was likewise permitted to express his opinion as to whether appellee's physical condition

was such that he could do any labor. These opinions were merely those of a nonexpert, and should not have been permitted, and the complaints so made by appellee to one other than a physician were of a self-serving nature, and therefore incompetent.

As to the second appeal of Ross against Jones it is necessary to say little. Jones was the engineer of the train which collided with the train upon which appellee was riding, and was made a joint defendant with the company.

The allegations of the petition only charge negligence in a general way, and that the collision between the two trains resulted from the carelessness and negligence of defendant company and its agents and employees, who were then and there in charge of both of the trains. Under the evidence recited in the former opinion the jury was authorized to find the engineer free from negligence in bringing about the accident, and to find some other employee on one or the other of the trains was guilty of the negligence for which the company was held liable.

Upon the appeal of the company the judgment is reversed, with directions to grant it a new trial, and for further proceedings consistent herewith. Upon the appeal of Ross against Jones the judgment is affirmed.