## Howard v. Southern Harlan Coal Co.

June 13, 1941.

G. G. Rawlings for appellant.

T. E. Mahan for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

For nine or more years "off and on" prior to September 21, 1938, appellant had been employed to cut and sell meat and do "general store work" in appellee's store at Lena Rue, Kentucky. On that date he undertook to move a stove, the legs of which had been placed on rollers, from the front of the storeroom where it had been on display, to a stockroom in the rear. He had performed similar operations many times, and, on several occasions, had complained to Mr. Carter, the manager in charge, that the "work was too hard, and was more than I could do." The order to move the stove back into the stockroom had been given by Mr. Carter before he "left for Cincinnati," and appellant was not instructed as to the means he was to employ. He did not know who had moved the stove from the stockroom to the front of the store some ten days or two weeks previously, or who had placed it on rollers, although he "had brought them in and out for the past nine or ten years." Between the wooden floor of the storeroom and the concrete floor of the stockroom was a crack or break about an inch and one half in depth which had been getting larger for some time, and was one of the conditions which had caused appellant to ask for additional help. On the occasion referred to he had elected to pull the stove rather than push it, but made no inspection to ascertain whether the rollers were in place. His account of the ensuing accident is as follows:

"Q. When you started to move this stove then what took place? A. I just took hold of it, started to pull it from the front through this partition door, and got to this door, and the stove, the roller turned from under it, and let its weight, the weight of the stove fall on me.

"Q. After the stove turned over on you, what did you do? A. I got up from under the stove and tried to move it, and couldn't because I didn't feel like it.

"Q. What did you find? A. I found one of the rollers was out from under it, and it had three instead of four.

"Q. When you examined the stove there was only three under it? A. Yes.

"Q. How many legs or rollers should have been under it? A. Four under it, it takes four to make a set."

On cross examination the appellant testified that the stove "just fell against me and I held it up if I hadn't it would have turned over." He finished his work and moved several more stoves that night. Although he sustained a rupture as a result of the accident, he continued the performance of his daily tasks without interruption until the following June, when he was laid off for other causes. There were no witnesses to the accident, and, at the conclusion of appellant's testimony, the Court peremptorily instructed the jury to find a verdict for appellee. Hence, this appeal.

In his original petition seeking damages for his injuries, appellant charged that appellee knew that the stove was too heavy for appellant to handle with safety, and negligently failed to furnish him a sufficient number of men, tools, or proper equipment to handle it with safety. In an amended petition appellant charged that the floor was dangerous and defective, and that "when the stove and mechanism of the stove's support came in contact with the defective and dangerous floor, caused the weight of the stove to come over and injure him, and which with the failure of defendant aforesaid, to furnish him a sufficient number of men to handle same was the direct and proximate cause of the injury," and further, "that the mechanical device upon which he had the stove was also improperly constructed as to move a heavy stove such as plaintiff moved aforesaid, and that the defendant operated and maintained and operated the said device for moving stoves aforesaid, at the time plaintiff was injured." In the final amendment appellant alleged that the appellee "furnished him a stove mover which was dangerous and defective, and so operated and

maintained at time of his injury, and which defective condition the defendant knew at time of injury or a sufficient length to have known of same by use of ordinary care on its part, and that the dangerous and defective condition of the said mover was one of the direct and proximate causes of the injury.''

The mechanical device or ''stove mover'' referred to was the missing roller, and there is not a scintilla of evidence in the record that it, or the stove, or any one of the three rollers which were in place, was insufficient or defective. The only defect in the floor, so far as the evidence shows, was the crack between the floor of the store and stock room; and it was not intimated that it was dangerous except to a person attempting to move an insufficiently supported stove over it, or alleged that appellee knew or could have known of that danger, or failed to exercise ordinary care to furnish appellant a reasonably safe place in which to do his work. Nor was there any testimony indicating that the stove, which weighed four hundred and fifty pounds, was too heavy for one man to move safely after it had been placed on rollers, or that the method employed was improper. Appellant made no attempt to account for the missing roller, nor did he suggest that appellee's manager or any of its employees knew that it was missing, or that it was any other person's duty to see to it that the roller was in place.

Appellant's counsel contends that since appellee, though eligible, was not operating under the provisions of the Workmen's Compensation Act, Kentucky Statutes, Section 4880 et seq., appellant cannot be charged with contributory negligence, or with having assumed the risk. Even so, appellee is not an insurer of its employees' safety, and is only liable to them for injuries received in its employ when it has been guilty of negligence constituting the proximate cause of the injuries. Moore v. Wright, 277 Ky. 242, 126 S. W. (2d) 121.

Here, the proximate cause of the accident, apparently, was appellant's own negligence in attempting to pull a heavy stove with only three rollers under it over a crack where two floors adjoined. Appellant's counsel says in his brief:

"This Court has held that when the law and facts become doubtful in the mind of the Court, then it is a question for the jury.''

232

Unfortunately for him, and sometimes for us, there is no such easy solution available. Besides, we have no doubt in this case as to the law, which, in view of the undisputed facts, makes it our mandatory duty to affirm the Circuit Court's judgment dismissing the petition.

Judgment affirmed.